May it please the Court, I am Dina Junker, and I represent Appellant State of Washington. This case is yet another attempt by a debtor to take for herself what the Bankruptcy Code assigns to creditors. Creditors should prevail here for two reasons. First, the terms of Masingale's plan, which was confirmed, binds her to pay creditors before she walks away with a house. Second, Masingale's argument puts courts in the absurd position of having to endorse an evasion of the law. This Court needs to read the exemption statutes to effectuate Congress' intent, and the Bankruptcy Appellate Panel failed to do so. The State asks that you reverse the bat. So what do you make of the 100% FMV on the Schedule C? Well, there's a lot of information that we can gather, just starting with Schedule C. The creditors had before them, during the objection period, the fact that on Schedule C, in addition to a 100% FMV designation, the election, the statutory authority was Section 522D2. And debtors can't rewrite a part of the statute that they don't like. When they elected 522D1, they accepted the limits that 522D1 put on it. The second place on Schedule C that we note is that there's a box to check if they're claiming a homestead over $155,000. Masingale did not check that box. Then we also have Schedule A, which identifies a property subject to the exemption as a debtor's home. It designates the value of the home as $165,430 and specifies there's a secured claim on the home of $130,724. So it's been easy for anyone to see her equity was less than the statutory cap, just based on the pleadings that Masingale put before the creditors. And Schedule A, by the way, is one place where one can do the equity calculation by looking at just a single schedule, if that is the inclination to hold people to single. But what Ms. Masingale is going to say is if there was ambiguity in any of these filings, there was an obligation to object within 30 days of that. Well, if there is ambiguity in any of the information that Masingale put before her creditors, the ambiguity must be construed against her as a drafter. Because it's originating in Chapter 11? Absolutely. Chapter 11 is probably the most significant reason that this case, it doesn't make sense to apply the 100% fair market value language in this case. And that's because in Chapter 11, debtors in possession are fiduciaries who are required to serve in the role of a trustee. They are charged with preserving the assets of the estate and maximizing recovery for the creditors. And as such, creditors are entitled to rely on their representations. It does not make sense to let them play the cat and mouse game with the people over whom they serve as fiduciaries. Can I ask you, Schwab limits the trustee to considering three entries on the Schedule C when determining whether an exemption is necessary. And you're telling us to look at the Chapter 11 plan, to look at Schedule A. Would we be running afoul of Schwab if we do that? Your Honor, you wouldn't be running afoul of Schwab because Schwab says that that particular trustee in that Chapter 7 case was entitled to look at only that information in that one little place. But the fact of the matter is, trustees must look at all of the information put before them by the debtor in order to execute their duties, their fiduciary duties to the creditors to maximize value of the estate. So the full context, that quote was actually taken out of context. The full quote is set forth in the State's reply brief. And you can see that it was an entitled to rely, not a directive to rely on three and only three. But you ask us to look at the Chapter 11 plan, but both the plan and the disclosure statement are very explicit that the debtors shall retain the debtor's home. That's correct. They're explicit that the debtor will retain the debtor's home on the condition that the creditors are paid in full. Debtors in possession are entitled in the Chapter 11 to retain the home. That's why they're saddled with the fiduciary, to retain their assets. Because the trustee is not in place, that's why they're saddled with fiduciary obligations to their creditors. But if you say the equity in the home at the time the petition was filed was $34,706, then why didn't the State object when the petition was filed at 950? Because it seems to me that we certainly could have objected. We would have been within our rights to object. But the State has decided not to object to that difference between the equity that she showed at the beginning of the petition date and the statutory cap that was allowed at the beginning of the petition date. With respect to the Schedule C, is your argument that later statements sort of eclipsed the 100% FMV, or is your argument that the 100% FMV is just not something that moves the needle in the first place? I see my time's running out. May I answer the question? So my argument is that the statements were served contemporaneously. The plan and disclosure statement were circulated before the objection period even ran. And like I said, Massengill was a fiduciary to her creditors. Creditors were entitled to rely on them. But would it have made a difference if the disclosure statement and the plan were circulated outside the 30 days? Would you have had to object at that point? No, Your Honor, because there was plenty of information in the rest of the schedules which trustees are obligated to examine. Okay. Why don't we hear from the trustee? Good morning, Your Honor. Good morning, panel judges. My name is John Munding. I am the attorney for the Chapter 7 trustee, who is myself. My colleague from the State of Washington did an excellent presentation and argument concerning their position both in the briefing and the argument today. But based on the panel's questions in my limited time, I'm going to jump right to the focus of, I believe it's the heart of the matter. First, this case begins its analysis at the appellate level with Law v. Siegel. That's Justice Scalia's append, and it dictates what should occur in this case and how a bankruptcy statute must be read according to its plain and unambiguous terms. Second, the decision creating and finding that all post-petition appreciation belongs to the debtor, not the bankruptcy estate, is directly in conflict with the holdings of Castleman and certainly Wilson v. Rigby. So I don't even need to address that. Coming back to the panel's discussion and concerns about the exemption and whether an objection needed to be lodged or not, you know, that's Taylor. And Taylor said, if you don't do it within 30 days after 4003B, you're out of luck. But that case is different for many reasons. First, it starts at Chapter 7. Second, the property to be claimed as exempt was described as unlawful. And third, the bankruptcy statute is not a lawful exemption. So what we have here is almost... Can I ask you a question? Why do we have to even reach the Law v. Siegel issue because here there wasn't an objection? Well, it starts... So we don't really need to delve into the issue about whether an equitable exemption to the bankruptcy code is being created or not? Thank you, Your Honor. And yes, we do need to get to the point where I believe misstated and misapplied the holding of Taylor. Because again, we can't forget that the debtors were their own trustee. They were the trustee. So if you take the narrow approach of Taylor as the BAP did, it's illogical. The result is like a bad country song. They're their own trustee. They did the disclosures. But I would cite the panel to re-review the schedules, which are 81 and Mundane ER 83. Just the notations. There's so much information in here for a Chapter 7 trustee. And again, I'm armchair quarterbacking because I was barred from making an objection under Federal Rule 1019, which also can't be modified under Siegel. You go to... You've got fair market value. It's disclosed. We have that in Schwab. Fair market value was disclosed, but the value was higher. Here, in this case, the value of $165,000 was clearly disclosed. Nobody disputes that at the time of this filing on September 28, 2015, that was the fair market value of the house. No issue. Why would you have to object to it? The debtors are entitled to a homestead. Nobody questioned that. Nobody ever objected to say, you're not entitled to a homestead because you didn't reside in the property. I think what the debtor is saying is we used the formulation that Schwab told us to use, 100% of FMV. They view that as a safe harbor. That's a very gratuitous interpretation, and it's regrettable the bankruptcy panel jumped on it. But here, in this case, unlike Schwab, there's no challenge that $165,000 was the value. So it's back of the napkin math. I mean, it's that simple. You take the value at Schedule A, which is restated at Schedule C. You take the debt, which is at Schedule A, clearly described. Nobody disputes that. You do the simple math as a trustee. But again, I'm armchair quarterbacking. But it's that straightforward. What is the significance of the box that was unchecked? It's significant, and it's kind of gratuitous, because that statute is there to make sure people aren't moving their property to Texas or somewhere else. And there's a box up at the top of the schedule that says you're capped. And if you're going to try and claim more and take your property to Texas when these schedules were back around in the OJ debacle time, you've got to check that box so everybody's on notice. But if you want to take that position as kind of like 100% fair market value of dicta, sounds like a great argument. You don't even have to look at that box, but that box is very clear. It says you better be under, what is it, 155 or 160. So that box on the top of Schedule C, that doesn't have to do with any kind of state law homestead exemption issue? If you're moving property and you're claiming the state homestead exemption, then you've got to check that box for that state. If you're trying to get around the federal, which is capped, it's just, it says not to exceed. And what's interesting, if you go to look at the third column, and I must say I should have emphasized this more in my briefing, current value of property without deducting exemption, that means subtraction. Again, the math is so straightforward. Trustees do 500 to 800 of these cases a year. You're moving, but you never, it would be malpractice to simply look at a single schedule. You have to take Schedule A, which has its purpose, Schedule C, which is the exemptions, Schedule D is the secured debt, and you take them cumulatively, but they also balance and check each other. So what does 100% of FMV mean then on that, in that box? 100% fair market value is the value of the resident as of the date of filing. We've cited, I think it was Gephardt, Wilson v. Rigby, but it's a snapshot in time. Here it was September 28, 2015, and that's what it means. Fully disclosed, 165. Nobody ever disputed it. In Schwab, they said the value was higher than the personal property, the equipment, and therefore challenged it. Here, at the time of filing, the residence was 165, end of story. And that's in the column that says value of claimed exemption, so you're taking 100% of FMV to mean value of the claimed exemption up to the statutory cap? Up to the statutory cap, and that's why, you know, it's an interesting issue, but for $10,000, as the trustee said, that's a trustee. When I made the motion, I never challenged the exemption. I simply sold the property and said, here's what they're getting. And that was never challenged, never stayed, and I sold the property. But you come back to that, it is capped. 145,950, that's the statutory amount, but if you go down Schedule C, they're using D-5 within this. There's a purpose. Both those statutes say not to exceed. They're interactive with each other. If you don't use your full homestead up to the cap, you can use D-5, the wild card, to protect your other property, and that's what they did. It's good bankruptcy practice here, but nobody is exceeding the cap, and what's kind of outrageous, and the Court touched on it, is the plan and disclosure statement. This started as a Chapter 11, $250,000 in fees out, no money to creditors, but they confirmed a plan within the plan and disclosure statement, cited in my briefing. It is crystal clear. They stated they would retain any property that exceeds value in excess of the statutory limitations, meaning they know the caps are there. This argument at the end of the day occurs because we had a three-year period when the debtors were the trustee. What they did is their business, I wasn't involved. I became involved. During that time, there's post-petition equity increasing in the property substantial. I sell it. Now we've got money to fight over. Because of the date this was filed, it probably should have been a seven. Let me ask you one question, since you won't have a rebuttal. I suspect that the appellee will come up and say, hey, Taylor sets a bright-line rule. You have to object within 30 days, and if there's no objection, then that exemption has to be honored, even if there wasn't even a good faith basis for it. You distinguish that case by saying whether there was a Chapter 7 trustee or not, but that's not what Taylor relies on for its holding. How should we think about Taylor? I suspect the appellee will come up and really rely on that. Precisely, Your Honor. What disclosures did these debtors make on the date of the filing with very sophisticated bankruptcy counsel? Unlike Taylor, and these are new forms because it's a whole different era, there is sufficient information in these forms to make a determination that the value of this house, the fair market value, was $165,430. That's the first analysis. Today, we go right to Zillow, check it. If it's fine, leave it. The next step is the amount of secured claim as disclosed. Then you take your napkin, and I still use paper and pen, boom, you're below the statutory cap. The disclosures were adequate. Not the best, but they're adequate. But fair market value, 100% of that, okay, so you're claiming $165,430. Here's your exemption. Well, that doesn't work because, one, you're capped by statute. Two, the property is secured as you disclose. So you just take the columns, do the math. And they also elected, this is very important, Schedule C, 522D1. They couldn't use D5 if they truly believed they had up to the statutory cap or in excess. Instead, they did their own math. They did their own math, and then you do that math on the other numbers under D5, and lo and behold, you hit the statutory cap. So it's just a great argument, and that's all it is. But that's why we have Law v. Siegel, and I know I'm out of time, and I would like to just, the analysis that Justice Scalia did in that case and how he addressed the dicta in Marama is fascinating. And you just can't take that 100% fair market value to say you can exceed, take the federal speed limit, for example. It's a maximum. My Maserati may go 185, doesn't mean I can go 120. I'm capped. And that's how it works. Thank you. I'm going to go somewhat over your time. I want to see if my colleagues have additional questions for you. No, thank you. I have no questions. Thank you. And we'll hear from counsel for Ms. Massengill. Good morning. May it please the Court. Darren DiGiacinto here for the appellee, Rosanna Massengill. As the BAP in this case correctly noted, Your Honors, the trial court here did err. And the trial court erred because seven years after this exemption became final under 522L and Rule 4003B1, the trial court on its own accord changed what was entered in that value of claimed exemption box on Schedule C for my clients. And the trial court didn't have authority to do that. And that's why we're here today. That's why we originally appealed. And the idea that this case is about other documents, a plan that wasn't confirmed for a year and a half after this exemption became final or any other argument related to the bankruptcy petition and schedules ignores the authority that dictates the outcome here. What authority is that? The authority is Taylor, Schwab, and the Owen case along with its progeny, including from this circuit, including N. Ray Smith and N. Ray Tillman that's currently up on a schedule C. And I'll let you give your response. The first is that neither of them originated in Chapter 11. And the second is that unlike those cases, here what we have is a statement in the Schedule C that's been followed within the 30-day objection period with numerous statements that seem directly contradictory to what was stated on the Schedule C, even assuming it means what you say it means. So how does Taylor and Schwab govern in light of those two differences? Certainly, Your Honor. The Schwab case is based on Schwab and Taylor decisions and outlining. As Judge Cope pointed out, the Schwab court points to the areas in Schedule C that can inform a party in interest if they need to object to an exemption. And that's part of that balancing test for exemptions. And sometimes it favors the creditor. Sometimes it favors the debtor. But that is why, and it's because those exemptions are set so that they can be used in the case of Chapter 11. But in Taylor, the court held that the trustee could rely on oral representations about the value of the claim. And did it limit it to any schedules that the trustee should consider when deciding whether to object or not? Certainly, Your Honor. My response to that would be that in Taylor, the actual exemption claimed was listed as not a dollar amount within a statutory limit. It was listed as unknown. And that unknown language is what created the disparities within the Third Circuit that ultimately led to the decision in Schwab, which went up to our Supreme Court. And Justice Thomas was tasked with identifying and trying to clarify what's the difference. In Taylor, you have unknown listed. In Schwab, you have a dollar amount that is within the statutory authority. And what they argued there was under value of claimed exemption, we put that dollar amount, but that dollar amount also matched what we valued the tools at at that time. And only after they later learned that the appraisal came in higher, did they say, well, what we really meant was we wanted the whole thing and you should have known. But in Taylor, the debtor kind of took the estimate of what the claim was worth. And in the case here, I don't see where the Massingales advised the creditors that the amount of exemption would exceed the statutory cap, unlike in Taylor. Well, my answer to you, Judge Koh, would be that the box itself, value of claimed exemption, 100% of fair market value, has to be above any statutory limit because as Mr. Munding pointed out, Section 522D1 at the time provided for joint debtors filing an exemption of just south of $46,000. And 100% of fair market value is clearly on its face not consistent with a dollar amount, which again, the Schwab holding did hold to. So let's assume you're right about that. What about the unchecked box? The unchecked box I don't believe has any implication here at all, Your Honor. And my legal reasoning for that is the same code provision that Mr. Munding was referencing, Section 105, in his comments about Law v. Siegel, the powers of the court to control the courtroom and to control its caseload may allow it to modify forms and to do things like that. But what it can't do is to change substantive rights provided by 522L to have exemptions timely determined in the event there is no objection. And that's why the language used here is so critical and so important to the decision in this case. When Justice Thomas provided what the appellants here have called dicta or gratuitous dicta, which number one, I don't agree was dicta at all. I believe it was an explanation of its reasoning that was designed to do exactly that, which was to clarify the differences. But even if it is dicta, the error by the trial court here and in the arguments of the appellants is it fails to give considered dicta of our Supreme Court the greater weight that it's afforded under authority. So let's assume you're right about that and that you're right about the box and that you're right that 100% FMV fits within what Schwab was talking about, at least in the four corners there. What about all the other statements that then came in the disclosure statement and in the plan? Because what concerns me is that they don't seem to be consistent with your interpretation of Schedule C. Okay. Thank you, Your Honor, for clarifying. My response to you would be that all of those other statements in the initial disclosure statement, the initial proposed plan that was provided, people everywhere all the time, parties in interest, U.S. trustees, agencies, object to claimed exemptions in Chapter 11 cases. This is not uncommon. And the initial proposed plan and disclosure statement, I would say near all the time, changed multiple times before they ever reached a point of confirmation. For the state to argue that they should be able to rely willy-nilly on this position that was filed in initial disclosure statement just doesn't hold up. The fact that it says wait or at a minimum creates that ambiguity that says they did exactly what in Schwab the trustee did, which was, you know, or in Taylor, excuse me, which the trustee did, which is they took the chance of do I object or not and they elected not to. And the result was that in Taylor you don't get to reserve anything else for the estate if that is the case. Right. I mean, the concern one would have, I think, with the position is that it's not just one statement in the disclosure statement or the plan. It's a series of statements that are all indicating in one way or the other that your clients were not seeking more than the cap. Or if they were, they were going to pay the creditors first. And it's not just one. It's, you know, we could probably list six, seven, maybe eight such statements. And so now it seems that you're trying to come in and point us to one that's not a, well, we could use these other things and figure it out. That's not what Schwab said. What Schwab said was you look at that box. And if what's claimed in that box is anything other than a statutorily, within the permissible amounts, dollar amount, that there has to be an objection by a party in interest. Or if they choose not to, they do so at their own risk. And if they choose not to, they do so at their own risk. And if they do not, then that is when the Owen case becomes so critical and it goes down that path. Because the exemptions are final 30 days after the 341 meeting, as your Honor knows. And once that becomes final, the effect from Owen and its progeny is that exempt property is revested in the debtor. It was long gone before a plan was ever approved in this case. It was long gone before a plan was ever approved in this case. So the intent of anybody matters other than in that box that Justice Thomas referenced. And I believe that is controlling here. But I think the big difference here is what you just said. In Schwab, the trustee didn't have to object because the stated value of the interest was within the statutory limits. And in this case, if you look at, I'm just looking at ER 625, the Massengill said the amount by which the exemption would be exceeded is zero. Because even if the value of the home is $165,430, there's a lien of $130,724, which is reflected in Schedule A. That Schedule A looks like the equity that the Massengills have in their home is less than $35,000. So I guess I'm unclear how Schwab fits here. Well, I mean, I actually think it does fit here because there's so many representations that the interest is within the statutory exemption in these various documents. So why wouldn't Schwab hold that the trustee was not required? Or I guess there wasn't a trustee at the time, but there was not an objection required by the creditors. Well, Your Honor, you're correct that if you do the math and you were to go through that process, that this would not have been above a statutorily exemptible amount if it were claimed in the box for the amount of the claimed exemption as the $35,000, $36,000, whatever it was at the time. If that had been listed in the box, there would have been no reason to object. The reason to object is found, Your Honor, in the fact that that box did not have a dollar amount that fell within there. It instead claims something different. And the reason that... Is there any limit, though, on what a debtor can then say after writing 100% FMV? The debtor can say directly contradictory things, and then years later we're going to come back and point to a single notation that says 100% FMV and that's it? Well, Your Honor, once the exemption becomes final at that point, it's not a part of the estate and 522C says it can't be used for payment or any sort of recourse against any property of the estate from prepetition debt. Is there anything a debtor could say after that Schedule C that would then put the trustee in a position of not having to object or a creditor? I would contend based on the language in the statute that this is a very limited issue on exemptions that has a very tight time frame and a short window. And once that is claimed, learned parties, and the state of Washington is an incredibly well-argued party in interest. They do great things. I'm a part of their state. I don't have animosity towards them at all. But here, there was an obligation pursuant to what was listed in that value of claimed exemption or even if they just had a question about it. They put it in front of the court under an objection and then it is dealt with before that 30 days runs. But I have not found a mechanism in the bankruptcy code or in any case law throughout the country at any point that once that property is exempt pulls it back into the estate for application. I have not found it. Would you concede that if you look at the Chapter 11 plan, the disclosures, the petition with the schedules, there is at least ambiguity as to what 100% of FMV means? I would concede at most, Your Honor, that there would have been an obligation enough to say that the state should have asked the court about it. And what is your response to the appellants pointing out the fiduciary duties that your clients had at this point in the Chapter 11 process? Certainly, I would contend as I stated earlier, Your Honor, that exemptions are challenged all the time in Chapter 11 plans. What these debtors did here is they utilized language that is found in Schwab exactly in the box that it was supposed to be. And outside of that, every other number they listed in their plan was accurate at the time as the Chapter 7 plan, which is the one that the trustee has looked at. There was not a misrepresentation about anything. There was not anything in that Schedule C that would be untoward because at the time the house was encumbered by a mortgage that took up a lot of its value. But these people by putting, these debtors by placing 100% of fair market value were doing exactly what Justice Thomas said, expressing their self from the estate. It's that box that controls, Your Honor. I mean, just looking at the disclosure statement, amount by which exemption exceeded zero. Correct. And at the time it didn't. How is that consistent with the Schedule C? Well, the value of the property, if they had taken out, as Your Honor pointed out a moment ago, under that math problem, if you figure it out, it would have fit. But even if they had put, you know, under the 100% of fair market value, there was zero that was going to go to credit for the debtors. And in the other part of the language you're referencing, I believe it says fully exempt and then pursuant to 522. And that was based on arguably the entry of 100% fair market value. There was nothing that would have gone to the estate out of the residence. We've taken you close to the end of your time. Do you want to conclude? Certainly, Your Honor. Just to the extent that it was a pre-petition, excuse me, post-petition accrual of any monies inuring back to the estate, the reason that doesn't apply here is exactly what we talked about on this being in the Owen and Ingray-Smith line and not within the Gebhardt or Wilson v. Rigby or Castleman line of cases. None of those ever dealt with a claim of 100% of fair market value that had the effect of a dollar amount or accrued amount that fit. And that is why any post-petition increase in value here inures to the Massengale. And I would ask that this Court hold that all of the remaining proceeds of the House belong to Mrs. Massengale and not to the estate. I'm happy to answer any other questions the panel has. Okay. Well, hearing none, I want to thank you for your argument this morning. Thank you, Your Honor. And we'll now hear a rebuttal from the State. Thank you, Your Honors. Until you asked the question, Massengale didn't address her fiduciary role. She served as the trustee for her creditors. And her argument really means, if her argument really means what she says it means, then she should have objected to her own exemption. And that's ridiculous. But it is entirely appropriate to require a fiduciary to be honest and transparent with her creditors. And the only reading of Schedule C that respects Massengale as a fiduciary is to permit 100% of fair market value up to any adjustable limit, just like the judicial conference did when it amended the official form. And just like what Massengale herself represented when she solicited votes in favor of her plan. The BAP misapplied Supreme Court precedents, producing absurd results. In addition, it took the unwarranted step of extending the Schwab Dicta to the Chapter 11 context. No other court in the land has done this. But you can dispose of this case without... I'm not sure any other court has been able to do that. Why not just object at the time? Because we didn't have to object. The information before the creditors was replete with indications that the value of her equity in the property, which is how 522 measures the exemption, the value of her equity in the property was less than the statutory cap. But you can dispose of this case without getting mired in the Schwab issue, because Massengale's confirmed Chapter 11 plan binds her and her creditors. This court should reverse the BAP, reinstate the bankruptcy court's order, and hold Ms. Massengale to the terms of her binding plan. Thank you. Thank you. I want to thank all counsel for the helpful briefing and argument. This matter is submitted.
judges: GOULD, BRESS, KOH